# In the United States Court of Federal Claims

No. 24-782C
(Filed Under Seal: December 9, 2024)
(Reissued: January 14, 2025)[*]

**FOR PUBLICATION**

```
*************************************
DECISIONPOINT CORPORATION,      *
                                *
              Plaintiff,        *
                                *
v.                              *
                                *
THE UNITED STATES,              *
                                *
              Defendant.        *
                                *
*************************************
```

*Kenneth A. Martin*, The Martin Law Firm, PLLC, McLean, VA, for Plaintiff.

*Mariana Teresa Acevado*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *William J. Grimaldi*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Also on the briefs were *Ronald C. Walton* and *Joshua B. Fix*, Trial Attorneys, Contract Litigation & Intellectual Property Division, U.S. Army, Fort Belvoir, VA.

## OPINION AND ORDER

Plaintiff DecisionPoint Corporation brings this post-award bid protest challenging the Department of the Army's decision to award a contract to Peterman & Sons Solutions ("P&S"). Compl. (ECF 1). Plaintiff argues that the Army's award to P&S was arbitrary and capricious because P&S and its subcontractor had formed a joint venture that was ineligible to receive the award. Plaintiff also argues that the Army failed to evaluate P&S's experience according to the terms of the solicitation and failed to perform a "best value" determination as the solicitation required. The

---

[*] Pursuant to the protective order in this case, the Court initially filed this opinion under seal on December 9, 2024, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by December 23, 2024. The parties notified the court via email on January 6, 2025, that there were no proposed redactions. The Court hereby releases publicly the opinion and order of December 9 in full.

parties have filed cross-motions for judgment on the administrative record, and I have heard oral argument.[1] For the reasons discussed below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**. The case is **DISMISSED**.

## BACKGROUND

### I. The Solicitation

The Army issued a solicitation, No. W-912CN-23-R-0027, for a single-award, fixed-price contract for Maintenance Assistance and Instruction Team ("MAIT") support for units in the Pacific. AR 301, 318, 322.

The procurement was set aside for offerors that qualified as "Service-Disabled Veteran Owned Small Businesses" under NAICS Code 541614 ("qualified small businesses"). AR 381, 1272; *see also* 13 C.F.R. § 128.401. But the solicitation also permitted offerors to team up with subcontractors that were not qualified small businesses, so long as the offeror complied with the limitations on subcontracting set out in the Federal Acquisition Regulation. *See* AR 7, 373–74; *see also* 48 C.F.R. ("FAR") § 52.219-14.

After a threshold review for form, the proposals were to be evaluated on a "best value" basis, meaning the final award would be made to the bid that provided the best overall value to the government given the price, not necessarily to the bid with the lowest price. AR 381, 397–98; FAR § 15.300 *et seq.*; *see Konecranes Nuclear Equip. & Servs., LLC v. United States*, 165 Fed. Cl. 421, 426 (2023). The evaluation considered three factors: (1) Key Personnel and Staffing, (2) Past Performance, and (3) Price. AR 398. The first factor would be rated as either acceptable or unacceptable. *Id.* Offers deemed technically acceptable would reach consideration of the second two factors, which would be given "approximately equal" weight. AR 386, 397–98.

This protest centers on the Past Performance factor, which was intended to "determine whether there is a reasonable expectation that the offeror can successfully perform the MAIT requirements." AR 400. The Army's review of Past Performance examined the recency, relevancy, and quality of previous work the offeror listed as Past Performance Information ("PPI"). AR 400–01. "Relevancy," the aspect of Past Performance most pertinent here, depended on whether the PPI was "the same or similar in nature, size, and complexity to the services being procured under this solicitation." AR 387. For purposes of the Past Performance evaluation, "the 'offeror' include[d] any joint ventures, subcontractors, and/or teaming partners proposed as

---

[1] Administrative Record ("AR") (ECF 11); Pl.'s Mot. for J. on the Administrative R. ("Pl.'s MJAR") (ECF 12); Def.'s Cross-Mot. for J. on the Administrative R. & Opp. ("Def.'s MJAR") (ECF 13); Pl.'s Resp. to Def's Cross-Mot. & Reply ("Pl.'s R&R") (ECF 15); Def.'s Reply (ECF 19); Transcript of Oral Argument ("Tr.") (ECF 21).

part of the prime contractor's team under this effort," AR 400, meaning that proposals could include PPIs attributable to either the offeror or its team partners.

The Army evaluated PPIs using the following rating system:

| Rating | Description |
|---|---|
| Very Relevant | Present/past performance effort involved essentially the same scope and magnitude of effort and complexities this solicitation requires. |
| Relevant | Present/past performance effort involved similar scope and magnitude of effort and complexities this solicitation requires. |
| Somewhat Relevant | Present/past performance effort involved some of the scope and magnitude of effort and complexities this solicitation requires. |
| Not Relevant | Present/past performance effort involved little or none of the scope and magnitude of effort and complexities this solicitation requires. |

AR 401. The offeror's overall Past Performance was, in turn, assigned one of five confidence ratings based on the likelihood the offeror could perform the contract: No Confidence, Limited Confidence, Neutral Confidence, Satisfactory Confidence, and Substantial Confidence. AR 400.

## II. The P&S Proposal

P&S's proposal identified itself as the prime contractor working with a subcontractor, The Oryza Group. AR 1981. P&S was a qualified small business, but Oryza was not. *See* AR 124.

P&S stated that it would operate with Oryza "as a single entity," further explaining that "[a]s an integrated organization hereafter known as ***Team P&S,*** we will operate under unified plans, procedures, and controls to provide the Government with a unified force for responsive and cost-effective support." AR 1981 (emphasis in original). Nevertheless, P&S clarified that while it would work with Oryza as a "single unit," P&S would "perform services for all management positions on the contract," and the proposal stated that P&S has a "proven ability to manage subcontractors." *Id.*

The proposal further depicted Team P&S's organizational structure in the following flowchart:



AR 1978. The flowchart shows that P&S would run the Corporate Project Management Office ("PMO"). *Id.* The PMO is connected to Oryza by a purple bracket, meaning — according to the legend at lower left — "Internal Coordination." *Id.*

In a table setting forth P&S's proposed labor rates, P&S listed the roles of Program Manager, Alternate Program Manager, Instructor/Course Developer, and Instructors in one out of three locations as exclusively filled by P&S as the prime contractor. AR 2039. The remaining two Instructor positions would be shared by the prime and subcontractor. *Id.*

P&S included three PPIs for evaluation of Past Performance. The first PPI was for a contract on which P&S served as the subcontractor, AR 1983, the second for a contract on which Oryza served as the subcontractor, AR 1986, and the third for a contract on which Oryza served as the prime, AR 1989.

Upon submission of the proposal, P&S stated that it "agree[d] with all terms, conditions, and provisions included in the solicitation." AR 1979. Further, Team P&S certified that it would "abide by and faithfully execute all contract requirements set forth in the Request for Proposal and its associated attachments." AR 1982.

### III. Evaluation of Proposals and Award of Contracts

The Army initially received seven proposals. AR 2292. Only the DecisionPoint and P&S proposals received an "acceptable" technical rating, so only those two proposals reached an evaluation of Past Performance. AR 2292, 3272.

The Army's Source Selection Evaluation Board ("SSEB") rated one of P&S's PPI submissions "relevant" and the other two "somewhat relevant." AR 2173, 2179–80. For each PPI, the SSEB stated which experience items were similar or shared some of the scope, magnitude, and complexities of this solicitation. AR 2179–80. Those explanations focused on what kind of work and skills the PPI items involved, and on what scale. *Id.* For the two PPIs receiving a "somewhat relevant" rating, the SSEB included a brief explanation why the submission had not received a "relevant" or "very relevant" rating instead. *Id.* Based on those evaluations, the Army assigned P&S a Past Performance rating of "Satisfactory Confidence." AR 2180.

The Source Selection Authority ("SSA") performed the best value determination. AR 2365–69. The SSA stated his concurrence with the SSEB ratings but also explained why P&S's PPIs that received "somewhat relevant" ratings may have been stronger than noted in the SSEB summary. *See* AR 2366 (explaining that the past performance in PPI #1 "clearly involve[d] many other critical facets of the PPI's" and demonstrated "extreme fluency with [s]upply and property management and accountability programs," and that PPI #3 was related to a Navy service contract, but "the actual performance was very similar to the Army's MAIT program"). The SSA separately noted that Oryza had relevant experience and ultimately stated that the "conglomerate of experience substantiates the overall 'Satisfactory Confidence' rating." AR 2367.

DecisionPoint received a Past Performance rating of "Substantial Confidence," AR 2165, a step higher than P&S's "Satisfactory Confidence" rating. AR 2173. But its quoted price was approximately $1.7 million higher than P&S's. AR 2369, 3275–76. The SSA compared the offers under performance-price tradeoff procedures, *see* AR 2367–69, and determined that the P&S proposal represented the best value to the government. *See* AR 2369 ("With past performance approximately equal to price, [DecisionPoint]'s higher past performance rating of Substantial Confidence, one level above [P&S]'s Satisfactory Confidence, does not warrant the substantial price differential of an additional $1,701,714.56.").

After a debriefing explaining the Army's decision, *see* AR 3269–76, DecisionPoint filed the present bid protest.

# DISCUSSION

## I. Legal Standards

### A. Jurisdiction and Standing

To reach the merits of the case, I must first determine that the Court has jurisdiction over DecisionPoint's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in post-award bid protests is derived from the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)). *See Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court jurisdiction "to render judgment on an action by an interested party objecting to … the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]" 28 U.S.C. § 1491(b)(1). This Court is empowered under the statute to "award any relief that the court considers proper, including declaratory and injunctive relief[.]" 28 U.S.C. § 1491(b)(2).

DecisionPoint must also have standing to challenge the contract award. DecisionPoint has Article III standing because it claims an injury — specifically, rejection of its bid — which is traceable to the allegedly defective procurement process and which could be redressed by this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The "interested party" requirement goes only to "statutory standing," and is therefore not jurisdictional in a strict sense. *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023). Nonetheless, "when the plaintiff is arguing that the [government] made an error in evaluating the bid of another contractor," a judicial determination of statutory standing remains "required," although it does not need to be made before reaching the merits. *Id.* at 1152.

To establish that it is an interested party, a plaintiff must show (1) that it is an "actual or prospective bidder" and (2) that it "possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) (itself citing *Lujan*, 504 U.S. at 561)). Here, there is no dispute that DecisionPoint meets the two-part test. First, DecisionPoint was an actual bidder who submitted a proposal. AR 1582–84. Second, DecisionPoint has the requisite economic interest because — as the only offeror other than P&S that met the solicitation's technical requirements, AR 2292 — it "had a substantial chance of being awarded the contract." *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 405 (2013); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting *Rex Serv. Corp.*, 448 F.3d at 1308).

### B. Standard of Review

This Court reviews bid protests "pursuant to the standards set forth in section 706 of title 5," *i.e.*, the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). The protester must show that the agency's action was arbitrary and capricious and that it was prejudiced by the agency's conduct. 5 U.S.C. § 706; *see, e.g.*, *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Weeks Marine*, 575 F.3d at 1358. When resolving motions for judgment on the administrative record under Rule 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1354 (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012) (addressing the standard under RCFC 52.1 and citing *Bannum*, 404 F.3d at 1356).

There are two bases for setting aside government procurements as arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Weeks Marine*, 575 F.3d at 1358; *Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). The first route involves determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1332–33 (quotes omitted) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). To succeed, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotes omitted) (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). The second route requires the disappointed bidder to "show a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quotes omitted) (quoting *Kentron Hawaii, Ltd v. Warner*, 480 F.2d 116, 1169 (D.C. Cir. 1973), and *Latecoere*, 19 F.3d at 1356). In either case, this Court's review is "highly deferential" to agency decision-making, *Advanced Data Concepts*, 216 F.3d at 1058 — especially in an award based on best value, where "the contracting officer ha[s] even greater discretion than if the contract were to have been awarded on the basis of cost alone." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004); *see also Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed. Cir. 2018).

## II. Merits

DecisionPoint argues that the award to P&S was flawed in various respects.

First, DecisionPoint argues that P&S and Oryza were in effect a joint venture that was not a qualified small business for purposes of the procurement. Compl.

¶¶ 32, 55; Pl.'s MJAR at 12–15. DecisionPoint is studiously vague, though, about the exact legal basis of that argument.

Teams composed of prime contractors and their subcontractors — as distinct from joint ventures — are a common feature of federal procurements. *See* FAR § 9.601. Sometimes teaming arrangements give rise to questions about whether the offeror is genuinely a qualified small business, in which case the Small Business Administration ("SBA") makes size determinations about contract offerors on request from procuring agencies. *See* 13 C.F.R. §§ 121.901, 121.1001 *et seq.*; FAR § 19.301-1(f); Tr. at 30–31, 33. Under 13 C.F.R. § 121.103(h)(3), the SBA can decide that an offeror and its "ostensible subcontractor" are in fact a joint venture for purposes of size qualifications.[2] But DecisionPoint disclaimed reliance on the ostensible subcontractor rule, *see* Tr. at 5 (seeking to "differentiat[e] what I think the issue is here versus the ostensible subcontractor rule"), 6–7, and is not requesting that P&S be referred to the SBA for a size determination, Tr. at 36, 38–39, 81, 85–86.

So what is DecisionPoint really saying? All that remains, apparently, is a theory that in the P&S proposal, the functions of P&S and Oryza were so integrated that the companies must have been a joint venture, compelling the Army to consider an SBA referral. Tr. at 36, 38–39, 81, 86; *see* Pl.'s MJAR at 7–8, 12–13, 16, 18; Pl.'s Resp. at 4–9, 12. That makes little sense: As explained above, P&S's proposal explained in several ways how its functions and Oryza's would be distinct — with P&S in charge. *See* AR 1978, 1981.

At most, DecisionPoint cites P&S's assurance that "[a]s an integrated organization, hereafter known as **Team P&S,** we will operate under unified plans, procedures, and controls to provide the Government with a unified force for responsive and cost-effective support." AR 1981 (emphasis in original). But the same page of the proposal states that P&S will fill all management positions, and that P&S is a "low risk" option because of its "[p]roven ability to manage subcontractors." *Id.* At any rate, the solicitation asked offerors to demonstrate that they would "successfully integrate and coordinate all activities" under the contract. AR 342. In context, the language P&S relies on merely reflects the solicitation's own language

---

[2] DecisionPoint also referred at argument to what it called the "general affiliation rules" of 13 C.F.R. § 121.103. Tr. at 34. But that argument was not visible in DecisionPoint's briefs and is therefore forfeited. *See SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.") (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). DecisionPoint expressly waived any argument that P&S and Oryza formally entered into an undisclosed joint venture. Tr. at 6; *see also* FAR § 9.601(a).

back to the government, conveying an assurance that P&S and Oryza would work together smoothly to give the Army what it wants.

P&S certified "agree[ment] with all terms, conditions, and provisions included in the solicitation," including small business qualifications, upon submission of the proposal. AR 1979. A contracting agency must sometimes look past the form of a certification and consider whether an offeror would satisfy the substance. *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330–31 (Fed. Cir. 2011); *see Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1315 (Fed. Cir. 2016). But contracting officers are "generally entitled to rely on a contractor's certifications" unless the proposal, on its face, calls the offeror's status into question or indicates that the offeror "could not and would not comply" with the solicitation requirements. *Harmonia Holdings Grp., LLC v. United* States, 999 F.3d 1397, 1405–06 (Fed. Cir. 2021) (collecting cases) (quotes omitted); *see also* FAR § 19.301-1(f) ("The contracting officer shall accept an offeror's representation in a specific bid or proposal that it is a small business unless … the contracting officer has a reason to question the representation."). Here, DecisionPoint cannot show that the Army "necessarily abused [its] discretion" by accepting P&S's certifications at face value. *Harmonia Holdings*, 999 F.3d at 1407.

Even if there were red flags in P&S's proposal that might have suggested an unusual merging of operations between P&S and Oryza, the SBA has provided by regulation that it will not find that a qualified prime and its non-qualified subcontractor have formed a joint venture when the prime meets the limitations on subcontracting set forth in 13 C.F.R. § 125.6. *See* 13 C.F.R. § 121.103(h)(3)(iii). That regulation, in a services procurement like this one, is satisfied when a qualified prime does not pay more than fifty percent of its labor costs to subcontractors that are not "similarly situated," *i.e.*, also qualified small businesses. *See* 13 C.F.R. § 125.6(a)(1).[3] P&S's labor rates table reflect that more than fifty percent of labor costs would go to P&S. AR 1140; Def.'s Reply at 8. DecisionPoint conceded at argument that P&S would comply with the limitations on subcontracting, Tr. at 28, which would rule out the

---

[3] DecisionPoint relies on the SBA's decision in *Size Appeal of: SecTek* for the proposition that a prime that will complete over fifty percent of the work can nonetheless be treated as a joint venturer with its subcontractor based on the totality of the circumstances. SBA No. SIZ-4558, 2003 WL 21876712, at *5 (May 14, 2003); Tr. at 39–41. But *SecTek* interpreted 13 C.F.R. § 121.103 as it existed in 2003, before the safe harbor to the ostensible subcontractor rule was added in May 2023. *Compare* 13 C.F.R. § 121.103(h)(4) (effective through 2005), *with* 13 C.F.R. § 121.103(h)(3)(iii) (adding the relevant safe harbor in the version effective May 2023–August 2023 and maintaining it through the time of the solicitation and protest in the version effective August 2023–March 2024 and the current version, effective March 2024–present). Under the current version of the regulation, the totality of circumstances analysis in 13 C.F.R. § 121.103(h)(3)(i) only matters when the safe harbor of 13 C.F.R. § 121.103(h)(3)(iii) is inapplicable.

SBA finding a joint venture under 13 C.F.R. § 121.103(h) even if the Army had made a referral.

Second, DecisionPoint takes issue with the Army's analysis of P&S's Past Performance. Most importantly, DecisionPoint objects to the adjectival ratings assigned to P&S's PPIs. Pl.'s MJAR at 20–22. That is a difficult argument. The SSEB explained its choice of adjectival ratings, including its reasons for not awarding higher ratings. *See* AR 2179–80. The SSA then exercised independent judgment to reach the same overall conclusions. AR 2366–67. Because the Court does not evaluate proposals anew, it will not second guess the discretionary determinations of procurement officials. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *AccelGov, LLC v. United States*, 170 Fed. Cl. 508, 518 (2024). Instead, DecisionPoint must establish that the government acted "arbitrarily, capriciously, or contrary to the terms of the solicitation." *Harmonia Holdings*, 999 F.3d at 1408.

In essence, DecisionPoint disagrees with the Army's opinion about how P&S's PPIs compare with the work required by the solicitation. *See* Pl.'s MJAR at 20–21. For example, DecisionPoint argues that P&S's PPI #1 could not have been "somewhat relevant" to the solicitation because it was for a $4 million subcontract and the work did not involve training, assessment, or instruction. Pl.'s MJAR at 20. But the SSEB took that into account, reasoning that the PPI involved other kinds of relevant work with "some" of the magnitude, effort, and complexity required by the solicitation. AR 2179. The SSEB also acknowledged that PPI #1 did not include the other kinds of work DecisionPoint mentions. *Id.* The SSEB thus assigned a "somewhat relevant" rating rather than "relevant" or "very relevant." *Id.* It is hard to see anything arbitrary about that: Because the Army provided a "coherent and reasonable explanation" rooted in the record, *Impresa*, 238 F.3d at 1332–33 (quotes omitted), its discretionary assignment of the adjectival ratings cannot be disturbed.

Even if the adjectival ratings were debatable, DecisionPoint has failed to explain why I should set them aside. DecisionPoint argues, for example, that the Army failed to take into account differences between the size of P&S's PPIs and the size of the present procurement. *See* Pl.'s MJAR at 15, 19–21. Not only were DecisionPoint's own calculations about the projects' relative sizes largely unexplained, *see* Pl.'s MJAR at 20–21, but DecisionPoint conceded at oral argument that they were wrong, and it never provided accurate estimates or explained its methods. Tr. at 40. That is hopelessly inadequate as a basis for overturning the Army's exercise of discretion.

DecisionPoint relatedly argues that the Army should have at least distinguished P&S's and Oryza's experience when considering Past Performance,

- 10 -

Pl.'s MJAR at 18, 22, but that contradicts the terms of the solicitation, which explicitly required the Army to treat the experience of a prime and subcontractor together. AR 400 (stating that for "purposes of this evaluation, the 'offeror' includes any joint venturers, subcontractors and/or teaming partners proposed as part of the prime contractor's team under this effort"); 13 C.F.R. § 121.103(h)(3)(ii) (allowing "a prime contractor [to] use the experience and past performance of a subcontractor to enhance or strengthen its offer"); *see also, e.g.*, *PAI Corp. v. United States*, No. 09-411C, 2009 WL 3049213 *8–9 (Fed. Cl. Sept. 14, 2009), *aff'd*, 614 F.3d 1347 (Fed. Cir. 2010). The Army likely would have acted arbitrarily if it had distinguished P&S's and Oryza's Past Performance as DecisionPoint proposes.

Third, DecisionPoint argues that the Army lacked a rational basis for its tradeoff analysis and instead selected P&S's proposal because it offered the lowest technically acceptable price, rather than the best value. Pl.'s MJAR at 23–25. That argument directly contradicts the record, which showed that the Army SSA considered DecisionPoint's higher Past Performance rating and decided that it did not justify DecisionPoint's much higher price. *See* AR 2365–69. That is a rational decision supported by the record, so this Court cannot overturn it. *See Cleveland Assets*, 883 F.3d at 1382.

## CONCLUSION

For the foregoing reasons, Defendant's Cross-Motion for Judgment on the Administrative Record (ECF 13) is **GRANTED**. Plaintiff's Motion for Judgment on the Administrative Record (ECF 12) is **DENIED**. The case is **DISMISSED**.

Pursuant to the Court's May 28, 2024, Protective Order (ECF 10), this Opinion has been issued under seal. The transcript of oral argument is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, are **ORDERED** to file notice of their proposed redactions no later than **December 23, 2024**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

The parties have not complied with their obligation to file redacted versions of their own filings. *See* Protective Order ¶ 12. The parties are **ORDERED** to file the required redacted versions by **December 23, 2024**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz  
STEPHEN S. SCHWARTZ  
Judge